# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| GERALD C. JONES, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. CIV-12-1403-M |
| CAROLYN W. COLVIN,[1] Commissioner, Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Gerald Jones (Plaintiff) has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. Chief United States District Judge Vicki Miles-LaGrange referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(3), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the Commissioner's decision be affirmed.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

## I. Administrative proceedings

In his application for benefits, Plaintiff alleged that his impairment became disabling in May 2006. AR 167-68. The Social Security Administration (SSA) denied Plaintiff's claim, and at his request, an Administrative Law Judge (ALJ) conducted a hearing. *Id.* at 10, 27-61. In her November 2011 decision, the ALJ found that Plaintiff is not disabled. *Id.* at 18. The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-6, and Plaintiff now seeks review in this Court. Doc. 1.

## II. Disability determination

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving he has one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he carries that burden, the ALJ will conduct a residual

functional capacity (RFC)[2] assessment at step four to determine what, if anything, Plaintiff can still do despite his impairments. *See* 20 C.F.R. § 404.1545(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that he cannot engage in prior work activity, the burden shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

### III. Analysis

Plaintiff alleges that the ALJ committed error in: (1) failing to properly evaluate the consulting physician's opinion, and (2) assessing Plaintiff's credibility. Doc. 14, at 14-23.[3] The undersigned disagrees on both issues, and recommends that the Court affirm the Commissioner's decision.

**A. Standard for review.**

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). As

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

[3] For the parties' briefs, page citations reflect this Court's CM/ECF pagination.

3

the Tenth Circuit has cautioned, "common sense, not technical perfection, is our guide." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

**B.     The ALJ's findings.**

The ALJ found that Plaintiff: (1) met the insured status requirements through December 31, 2010, (2) has not engaged in substantial gainful activity since May 2006, and (3) has severe "lumbar disc disease with mild bulging."[4] AR 13. Next, the ALJ found that Plaintiff has the RFC to perform a wide range of light work with occasional climbing, kneeling, crouching, stooping, and crawling. *Id.* at 17. The ALJ finally opined that Plaintiff has "acquired work skills from past relevant work that [are] transferable to other occupations with jobs existing in significant numbers in the national economy," and is therefore not disabled. *Id.* at 20-21.

**C.     Plaintiff's claims of error.**

  **1.     The ALJ properly evaluated the consulting physician's opinion.**

Plaintiff alleges that the ALJ: (a) failed to explain the weight she accorded to the consulting physician's opinion, (b) failed to "discuss [the physician's] actual opinion[] at all," (c) mischaracterized the physician's findings as "minimal," and (d) rejected the physician's opinion without legitimate reasons. Doc. 14, at 14-18. Applying common sense, the

---

[4]     Unless otherwise indicated, all quotations are reprinted verbatim.

4

undersigned finds that the ALJ sufficiently discussed and rejected the physician's opinion. *Keyes-Zachary*, 695 F.3d at 1167.

### a. The ALJ's duty to consider the physician's opinion.

#### i. The law.

The parties agree that Dr. Harold Zane DeLaughter examined Plaintiff once, at the SSA's request. Doc. 14, at 17; Doc. 15, at 3. As an examining consultant, Dr. DeLaughter's opinion was generally entitled to less weight than a treating physician's opinion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinions of physicians who have seen a claimant over a period of time for purposes of treatment are given more weight over the views of consulting physicians . . . .") (citation and internal brackets omitted). Nevertheless, the ALJ was required to properly consider Dr. DeLaughter's opinion and provide legitimate reasons for discounting it. 20 C.F.R. § 4 ,,04.1527(c). Some factors the ALJ should have considered include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (citation omitted). However, the ALJ need not explicitly discuss every factor — so long as her decision is "'sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the . . . medical opinion and the reasons for that weight.' . . . Nothing more was required . . . ." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citation omitted).

### ii. Application of the law.

Dr. DeLaughter examined Plaintiff in May 2011 and found that he had: (1) "very little [range of motion] of the lumbar spine," (2) "[straight leg raise] positive bilaterally in seated and supine positions," and (3) "weak bilaterally" toe and heel walking. AR 278; *see also id.* at 281. Based on these findings and on Plaintiff's self-reported history, *id.* at 277, Dr. DeLaughter opined in relevant part that Plaintiff can: (1) never lift or carry up to ten pounds; (2) sit for only fifteen minutes, stand for twenty minutes, and walk for only ten minutes without interruption; and (3) in an eight-hour day, can only sit for two hours, stand for three hours, and walk for two hours. *Id.* at 282-83.

### iii. The ALJ's assessment of Dr. DeLaughter's opinion and Plaintiff's challenges to that assessment.

The ALJ discussed Dr. DeLaughter's findings in two separate sections, writing:

6

> On May 19, 2011, the claimant underwent a consultative medical examination. The claimant reported back pain. The examination showed he weighed 128 pounds at sixty-eight inches tall. He asked to have questions repeated, and he turned his right ear toward the examiner. The claimant moved about the examination room with some difficulty, and he had very little range of motion of the lumbar spine. Straight leg raise testing was positive bilaterally in the seated and supine positions. Toe and heel walking were weak bilaterally. The claimant ambulated with a stable gait at a decreased speed, leaning forward and with no hip swing, without the use of assistive devices. There was no report of degree of effort or other observations of attempt of full or less than full cooperation. The claimant was assessed with degenerative disc disease of the lumbar spine and a hearing loss (Exhibit 9F).

AR 14.

> The post-hearing consultative examiner identified the claimant's reports of what he could do, and the claimant exaggerated significantly (Exhibit 9F). There was no discussion of observations of degree of effort or cooperation on examination. The findings on examination, other than observations, were minimal, consistent with the minimal findings of other sources.

*Id.* at 19.

Plaintiff challenges the ALJ's assessment on four grounds. First, he claims that the ALJ never specified what weight she gave to Dr. DeLaughter's opinion. Doc. 14, at 16. But a common-sense reading of the ALJ's above second-quoted paragraph shows that she rejected Dr. DeLaughter's opinion, AR 19, and Plaintiff himself agrees with this interpretation. Doc. 14, at 17 (arguing that "the ALJ's reasons for rejecting Dr. DeLaughter's opinions were entirely lacking in legitimacy"). So, the

7

undersigned finds that this "merely technical omission[]" is not grounds for reversal. *Keyes-Zachary*, 695 F.3d at 1166 ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

Second, Plaintiff complains that the ALJ discussed Dr. DeLaughter's findings, but not his actual "opinion" regarding Plaintiff's limitations. Doc. 14, at 15-16. However, the ALJ rejected the consulting physician's findings and, as discussed below, she gave legitimate reasons for doing so. In that regard, the undersigned finds no error in the ALJ's failure to specifically recite Dr. DeLaughter's opinion regarding Plaintiff's limitations. *See, e.g.*, *Clifton v. Chater*, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) ("The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.").

Third, Plaintiff complains that the ALJ mischaracterized Dr. DeLaughter's findings on examination as "minimal," when they were "actually fairly significant." Doc. 14, at 17. But as illustrated above, the ALJ documented and considered Dr. DeLaughter's findings, and this Court will not "'reweigh the evidence or substitute our judgment for the [ALJ's].'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted).

8

Finally, Plaintiff alleges that the reasons the ALJ gave for rejecting Dr. DeLaughter's findings "were entirely lacking in legitimacy." Doc. 14, at 17. Primarily, Plaintiff takes issue with the ALJ's finding that Plaintiff's self-reported limitations, which the physician relied upon in part, were "'exaggerated significantly.'" *Id.* at 16 (citing AR 19). However, as discussed below, the ALJ conducted a thorough credibility analysis and found Plaintiff's subjective allegations to be lacking in credibility. So, this was a legitimate reason for rejecting Dr. DeLaughter's findings. *See Oldham*, 509 F.3d at 1259 (finding it proper to "discount[] the opinions of all treating and examining sources" when they based their opinions on claimant's subjective complaints, which in turn have been found to be less than credible).[5]

Applying a common-sense reading to the ALJ's decision, the undersigned finds that it is sufficiently developed and allows for this Court to find that the ALJ applied the correct legal standards. And, because the ALJ provided legitimate reasons for rejecting Dr. DeLaughter's opinion, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[5]  Notably, Dr. DeLaughter did not examine Plaintiff until May 2011 – five months after Plaintiff's insured status expired. AR 277. Nevertheless, the consulting examiner opined that Plaintiff's limitations had existed since September 2005. *Id.* at 287. It seems likely that Dr. DeLaughter heavily relied on Plaintiff's self-reporting statements in making this six-year past assessment.

9

## 2. Plaintiff's challenges to the ALJ's credibility analysis.

In his second proposition, Plaintiff alleges that the ALJ erred in the credibility analysis. Doc. 14, at 18-23. Specifically, Plaintiff claims that the ALJ: (1) failed to "closely and affirmatively link" her findings to "substantial evidence," (2) failed to discuss relevant testimony, and (3) relied on "factually inaccurate statements." *Id.* at 23. The undersigned finds no grounds for reversal based on these claims.

### a. Standard of review.

On review, this Court generally considers an ALJ's credibility determination binding, subject to reversal only when the evidence is insubstantial. *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990); *Wilson*, 602 F.3d at 1144. "Credibility determinations are peculiarly the province of the finder of fact, and [this Court] will not upset such determinations when supported by substantial evidence." *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013) (citation omitted). Indeed, the ALJ has an "institutional advantage" in making credibility determinations. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). "Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion." *Id.*

### b. The law.

Once an ALJ finds a pain-producing impairment, she must take the next step and assess the claimant's credibility. *See* 20 C.F.R. § 404.1529. "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Newbold*, 718 F.3d at 1267. Factors an ALJ should consider include a claimant's "persistent attempts to find relief for . . . pain and . . . willingness to try any treatment prescribed, . . . regular contact with a doctor, . . . daily activities, and the dosage, effectiveness, and side effects of medication." *Keyes-Zachary*, 695 F.3d at 1167 (internal quotations, citations, and brackets omitted). However, as long as the ALJ sets forth the evidence that she relies upon in evaluating credibility, she "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Id.* (quotation omitted). Again, "common sense, not technical perfection, is our guide." *Id.*

### c. The ALJ's credibility analysis.

In assessing Plaintiff's credibility, the ALJ opined:

> The claimant testified at the hearing that on bad days, he had difficulty getting dressed and took pain medications to start the day. The claimant said he got dressed always. Usually, he does not need help getting up, but he might get on his hands and knees to get off the floor. He reported that most of his meals were prepared for him. The claimant testified he always was somewhat thin, but he lost more weight. He reported no social activities, but then, he admitted his oldest son visit[s] occasionally. He works with the school on lesson plans for his

youngest son. The claimant testified that he could walk one block with pain. He does go grocery shopping for limited items. He uses a computer. On some nights, he sleeps in a sleeping bag on the floor. On asking the claimant the reasons for the delay in filing of nearly three years, he admitted that he thought he would get better and asked for a release to work in 2006. The claimant said he saw a surgeon who said he would not touch the claimant, as there was too much risk of paralysis.

The claimant reported in his adult function report that he did light household work, such as cleaning, cooking, and laundry for ten to twenty minutes at a time. He reported checking on horses and helping his 13-year old son with lessons and homeschooling. He showers and goes to bed. He feeds and waters four horses and four dogs. He hauls hay and does horse training. He reported preparing sandwiches and quick meals. He reported walking, driving, and riding in a car. He reported shopping for food and household items. He reported sometimes going on a quick outing to fish. He reported going to a church revival when he could, once or twice yearly fishing, and four to six times yearly to a ball game. The claimant reported that he could walk for ten to fifteen minutes, for 1/4 mile, before needing to rest. He reported no difficulty following written or spoken instruction. He indicated that he could pay attention for hours (Exhibit 4E). At the hearing, he reported that his sons took care of the dogs and horses and that he did not do most of those activities any longer. He used to ride horses, hunt, fish, hike, and swim.

The findings are normal (Exhibits 2F and 9F) with findings only of mild disc bulges. In contract to the claimant's allegations that he was sent to a chiropractor (Exhibit 6E, p. 2), he was sent to a medical doctor. The claimant walks somewhat stooped, which might contribute to his back pain. Nonetheless, the claimant was sent to a different doctor for another examination.

The claimant did not appear at all uncomfortable at the hearing. The claimant was asked about his weight, and he admitted that he always had been somewhat thin, even when working. He weighed about 140 to 145 pounds when working. Despite his testimony that he could sit for fifteen to twenty

12

minutes, he sat for about fifty minutes and arose only after his testimony was completed. There is no evidence of a surgeon informing the claimant that he, more than any other candidate for surgery to the spine, risked paralysis.

AR 17-18.

### d. Plaintiff's challenges.

Without significant discussion, Plaintiff first alleges that the ALJ's credibility analysis failed to "affirmatively link" her findings with "substantial evidence." Doc. 14, at 23. But a simple reading of the credibility opinion dispels that allegation. That is, it is clear to the undersigned that the ALJ found Plaintiff less than credible in large part based on: (1) contradictions between his hearing testimony and his adult function report, (2) the relative mildness of the medical evidence, and (3) Plaintiff's demeanor at the hearing. Thus, "the ALJ's findings were closely enough linked to the evidence to pass muster." *Keyes-Zachary*, 695 F.3d at 1172; *see also Porter v. Colvin*, 525 F. App'x 760, 763-64 (10th Cir. 2013) (rejecting plaintiff's complaint that the ALJ did not sufficiently link credibility findings to the evidence of record because he "offered several reasons for his assessment" and "identif[ied] various pieces of record evidence").

Plaintiff also complains that the ALJ failed to acknowledge some evidence, including his testimony that he: (1) did not perform any household chores, (2) was limited in computer use due to "lack of skill and an inability to

13

sit very long," (3) had to "shave in three separate intervals," (4) "spent bad days lying down," (5) lay down "three to five times a day even on good days," (6) had "weakness and numbness in his lower extremities" causing him to "fall multiple times" and "painful lower back swelling limiting his choice of clothes and seating arrangements," and (7) would consider surgery "if it were an option." Doc. 14, at 21-23. But the ALJ was not required to recite every statement Plaintiff made during the hearing. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) ("Contrary to plaintiff's view, our opinion in *Kepler* [*v. Chater*, 68 F.3d 387 (10th Cir. 1995)] does not require a formalistic factor-by-factor recitation of the evidence."). The ALJ clearly considered Plaintiff's testimony, and then set forth specific reasons for discounting it. That was sufficient. *See id.* ("So long as the ALJ sets forth the specific evidence [she] relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."). Further, despite Plaintiff's twice suggesting that the ALJ "selectively disregard[ed] the mild lateral recess stenosis caused by Mr. Jones' bulging L4-5 disk," Doc. 14, at 18, 22, the record establishes that the ALJ did in fact acknowledge such evidence. AR 14 ("Magnetic resonance imaging scan of the lumbar spine indicated mild degenerative changes involving the lumbar spine with a six-millimeter broad-based central disc protrusion involving the L4-L5 level.").

Finally, Plaintiff alleges that the ALJ relied on factually incorrect statements to find him less than credible. In one example, Plaintiff argues that the ALJ quoted him as saying that he only needed pain pills on "bad days," when in fact he testified to needing pain pills "every day." Doc. 14, at 21. The interpretation of this testimony is subjective. For example, to a question regarding Plaintiff's typical day, he testified: "Sometimes that depends on if I'm having a good day or a bad day, a bad day it's hard to even get up to get dressed. I almost always have to take pain medicine to just even to start the day." AR 33. Then later, Plaintiff's attorney stated: "Let's talk about the bad days if they're half the time then. . . . . [H]ow often do you have to take the pain medicine?" *Id.* at 46. Plaintiff answered: "I have to take the pain medicine every day, not always what he prescribes but a lot of over the counter medication, pain medication." *Id.* at 47.

One reasonable interpretation is that Plaintiff was saying he requires pain medication every day. But another reasonable interpretation is that Plaintiff was only referring to the "bad days" when he testified that he needed pain medication. Under the circumstances, the undersigned cannot find that the ALJ erred in her interpretation. *See Lax*, 489 F.3d at 1084 (holding that it is not the court's province to "reweigh the evidence"); *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)

("Credibility determinations are peculiarly the province of the finder of fact . . . .").

For some of Plaintiff's examples, the undersigned agrees that the ALJ's opinion included minor misstatements. For instance, Plaintiff's testimony indicates that he consistently sleeps on a pallet on the floor, AR 33, and the ALJ stated that Plaintiff sleeps on the floor on "some nights." *Id.* at 17. Also, Plaintiff testified that his *treating physician* informed him that "a surgeon would not touch me" because "they don't want to take a chance of operation which could paralyze me." *Id.* at 48. The ALJ mistakenly found that Plaintiff had testified that a *surgeon* had communicated this information to him, and then commented that no such evidence was in the record. *Id.* at 17, 18. But the ALJ's opinion cannot be read to place any significant emphasis on the first misstatement, and there is similarly no evidence that Plaintiff's treating physician ever opined that he was at any greater risk of paralysis from surgery. Thus, it is clear to the undersigned that the ALJ would have reached the same credibility conclusions regardless, and such misstatements are harmless as a matter of law. *See Foster v. Chater,* No. 95-7049, 1995 WL 694132, at *2 (10th Cir. Nov. 24, 1995) (unpublished op.) ("Because the ALJ's credibility determination, here, was otherwise supported by substantial evidence, his passing comment . . . was, at most, harmless error."); *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (holding that the harmless-

error doctrine applies in social security cases where the court can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

The Court can follow the ALJ's credibility reasoning and the undersigned finds that she provided legitimate support for discounting Plaintiff's credibility. So, the undersigned finds no grounds for reversal.

## IV. Recommendation and notice of right to object

For the reasons discussed above, the undersigned recommends that the Commissioner's decision be affirmed.

The parties are advised of their right to object to this report and recommendation by the 19th day of February, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this report and recommendation waives their right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of January, 2014.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE